STATE OF NORTH CAROLINA v. ANTHONY SEAN YANCEY

No. COA01-1490

(Filed 31 December 2002)

**Evidence— character—defendant as "asset" of drug dealer**

The trial court erred in a cocaine trafficking prosecution by admitting testimony that defendant was an "asset" for the witness in trafficking cocaine. This testimony came before defendant put on any evidence, it effectively characterized defendant as a drug dealer, and it was prejudicial because it was the only evidence definitively linking defendant with drug trafficking.

Appeal by defendant from judgments entered 1 June 2001 by Judge Dwight L. Cranford in Pitt County Superior Court. Heard in the Court of Appeals 12 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General J. Philip Allen, for the State.*

*Jonathan E. Jones for defendant appellant.*

TIMMONS-GOODSON, Judge.

Anthony Sean Yancey ("defendant") appeals from the judgments of the trial court entered upon a jury verdict finding defendant guilty of trafficking in cocaine and conspiring to traffic in cocaine. For the reasons stated herein, we vacate the judgment of the trial court and remand defendant's case for a new trial.

At trial, the State presented evidence tending to show the following: On 31 December 1999, law enforcement officers with the Greenville Police Department executed a search warrant for a residence on Chestnut Street in Greenville, North Carolina. At the time of the search warrant, the residence was rented to Otis Barrett ("Barrett"). Upon entering the residence, officers found four occupants, including Barrett, defendant and two women. After securing the occupants, the officers searched the residence. In the kitchen, officers discovered twenty to thirty small plastic sandwich bags with their corners cut in a manner commonly used to package crack cocaine. Officers also discovered several ounces of crack cocaine hidden beneath some bed linens, and found razor blades and scales typically used to cut and weigh crack cocaine. When the officers searched Barrett, they found $1,414.00 on his person.

Omar Fogg ("Fogg") presented further testimony on behalf of the State. Fogg testifed that he was serving a prison sentence for drug possession with the North Carolina Department of Correction. Fogg stated that he met defendant at the Pitt County Detention Center, where defendant shared a cell with Fogg's brother. After Fogg's release from the detention center, he remained in contact with defendant by supplying him with cocaine. Fogg subsequently obtained defendant's release from the detention center by posting defendant's bond. Fogg explained that he posted defendant's bond because he "thought [defendant] was an asset to help me [in] trafficking the cocaine." According to Fogg, defendant informed him that the cocaine seized by law enforcement officers on 31 December 1999 belonged to him.

The State presented further testimony by Kenzar Maye ("Maye"). Maye testified that in the late evening and early morning hours of 30 and 31 December 1999, he and a friend stopped by Barrett's residence in order to purchase crack cocaine. As he approached Barrett's residence, Maye noticed defendant walking away from the rear of the house. Maye was later arrested that evening for drug possession.

Defendant testified that he was unaware of the presence of the drugs seized by officers at the Barrett residence on 31 December 1999. Defendant stated that Barrett was merely an acquaintance and that he had been at Barrett's residence only twenty minutes before the officers searched it. Defendant denied making the statements attributed to him by Fogg. Defendant's sister, Lisa Stagol, also testified that she was present at the Barrett residence on 31 December 1999 and had no knowledge of the drugs seized by law enforcement officers. She further denied any knowledge of defendant's participation in drug trafficking.

Upon considering the evidence, the jury found defendant guilty, and the trial court sentenced defendant to a minimum term of imprisonment of thirty-five months and a maximum term of forty-two months for the trafficking in cocaine by possession charge. The judge imposed the same sentence for the charge of conspiracy to traffic in cocaine by possession, to run consecutively to the first sentence. From these judgments and resulting sentences, defendant appeals.

Defendant presents three issues for review on appeal, arguing that the trial court committed prejudicial error in (1) admitting

improper character evidence; (2) admitting irrelevant evidence; and (3) denying defendant's motion for a mistrial.

By his first assignment of error, defendant argues that the trial court erred in allowing Fogg to testify that he "thought [defendant] was an asset to help [him in] trafficking the cocaine." Defendant asserts that Fogg's characterization of defendant as an "asset" was tantamount to identifying defendant as a drug dealer, thereby constituting improper character evidence. Because this evidence was improper and prejudicial, defendant contends that he is entitled to a new trial. We agree.

Rule 404(a) of the North Carolina Rules of Evidence provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." N.C. Gen. Stat. § 8C-1, Rule 404(a) (2001). Thus, evidence of the defendant's reputation in the community as a drug dealer is not admissible to show that the defendant is guilty of trafficking in drugs. *See State v. Taylor*, 117 N.C. App. 644, 651-52, 453 S.E.2d 225, 229 (1995); *State v. Morgan*, 111 N.C. App. 662, 668, 432 S.E.2d 877, 881 (1993). Character evidence is admissible, however, when first offered by the accused, in which case the prosecution may offer evidence to rebut such a showing by the defendant. *See* N.C. Gen. Stat. § 8C-1, Rule 404(a)(1). Until a defendant offers such evidence of his character, the State may not introduce evidence of his bad character. *See Taylor*, 117 N.C. App. at 651-52, 453 S.E.2d at 229-30.

We agree with defendant in the present case that Fogg's description of defendant as an "asset" in his drug trade effectively characterized defendant as a drug dealer. The word "asset" is defined as "[a] useful or valuable quality, person, or thing; an advantage or a resource." *The American Heritage College Dictionary* 82 (3d ed. 1997). Further, Fogg did not state that defendant *would be* an asset; rather, he stated that defendant *was* an asset, indicating that defendant had assisted Fogg in the past. In characterizing defendant as an "asset" to his cocaine trade, Fogg represented defendant to be a useful person in furthering his drug trafficking trade. As the State offered this testimony before defendant put forth any evidence, the trial court erred in admitting this statement. *See Taylor*, 117 N.C. App. at 652, 453 S.E.2d at 229-30; *Morgan*, 111 N.C. App. at 668, 432 S.E.2d at 881.

In order to gain a new trial, however, defendant must also show that he was prejudiced by the erroneous admission of this evidence.

A defendant is prejudiced "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached . . . ." N.C. Gen. Stat. § 15A-1443(a) (2001). The State contends that defendant cannot meet such a burden here. The State points to other damaging testimony by Fogg in support of its argument that, even if the admission of Fogg's description of defendant as an "asset" was error, such error was harmless in light of the evidence against him. We disagree.

The State points to the following evidence in support òf its contention that the error was harmless: Fogg stated that he met defendant at the detention center, where he supplied defendant with cocaine. Fogg explained that he posted bail for defendant, and that defendant had informed him that the cocaine seized by officers during the search of the Barrett residence belonged to him. Fogg also stated that defendant indicated that he was not worried about his arrest in connection with the 31 December 1999 seizure of cocaine, because "he was going to be able to walk because ain't nobody [sic] willing to testify against him . . . and that he's still got a military gun." Defendant allegedly informed Fogg that there was five thousand dollars in cash beneath the couch at Barrett's residence. The evidence also tended to show that Barrett was a known drug dealer. The State asserts that this evidence demonstrated that defendant was guilty of trafficking in cocaine, such that the erroneous admission of Fogg's statement was harmless. We are not so persuaded.

Although the evidence against defendant tends to show that defendant was a drug *user*, none of the evidence conclusively establishes that defendant *trafficked* in drugs, much less trafficked or conspired to traffic the drugs seized at Barrett's residence. The fact that Fogg supplied defendant with drugs in prison does not prove that defendant sold such drugs. When the officers searched Barrett's residence, they found no contraband of any type on defendant's person. The drugs seized at Barrett's residence were not in plain view, but located beneath some bed linens in a separate room from where the officers found defendant. *See State v. Autry*, 101 N.C. App. 245, 253-54, 399 S.E.2d 357, 363 (1991) (holding that, where the defendant was not the owner of the premises, nor present in the room where law enforcement officers discovered illicit drugs, the defendant did not constructively possess the drugs seized). There was no evidence to contradict defendant's statement that he had been at Barrett's residence for less than half of an hour before the officers arrived. Defendant's alleged boast to Fogg that he would "walk," as well as

the fact that he owned a weapon, are irrelevant to the issue of whether defendant was involved in trafficking the drugs seized at Barrett's residence. In reviewing the evidence, it is clear that the only evidence definitively linking defendant with drug trafficking in any manner is the inadmissible testimony by Fogg. Given the paucity of evidence against defendant in the instant case, we conclude that, had the trial court properly excluded the inadmissible testimony by Fogg, there is a reasonable possibility that the jury would have reached a different verdict. Defendant must be given a new trial. *See State v. Moctezuma*, 141 N.C. App. 90, 95, 539 S.E.2d 52, 56 (2000) (holding that, where there was insufficient evidence to connect the defendant with the drugs seized at defendant's residence, the admission of such evidence was erroneous and prejudicial, requiring a new trial).

Given our conclusion that defendant is entitled to a new trial, we need not address defendant's remaining assignments of error.

New trial.

Judges HUDSON and CAMPBELL concur.